UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA L.R.,[1]<br><br>    Plaintiff<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]<br><br>    Defendant. | Case No. 2:20-cv-9028-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   PROCEDURAL HISTORY

Plaintiff Debra L. R. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB").  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the undersigned United States Magistrate Judge (Dkts.

---

[1]   In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

[2]   On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See https://www.ssa.gov/history/commissioners.html*. She is therefore substituted as the defendant in this action.  See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

11, 12) and filed briefs addressing the disputed issues in this case. [Dkt. 18 ("Pltf's. Br."), Dkt. 19 ("Def. Br.").] The Court has taken the parties' briefing under submission without oral argument. For the reasons set forth below, the Court affirms the decision of the ALJ and orders that judgment be entered accordingly.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On October 20, 20217, Plaintiff filed an application for DIB alleging disability beginning September 5, 2015. [Dkt. 15, Administrative Record ("AR") 136-137.] In her application, Plaintiff stated that she became disabled and unable to work due to anxiety, depression, and related disorders. [AR 73-74.] Plaintiff's application was denied at the initial level of review and on reconsideration. [AR 75-80.] On November 15, 2019, a hearing was held before Administrative Law Judge Ken H. Chau ("the ALJ"). [AR 30-52.] On January 14, 2020, the ALJ issued an unfavorable decision. [AR 15-25.]

Applying the five-step sequential evaluation process, the ALJ found Plaintiff not disabled. *See* 20 C.F.R. § 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [AR 17.] At step two, the ALJ found that Plaintiff suffered from severe impairments including major depressive disorder, anxiety disorder, and alcohol use disorder. [AR 17.] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [AR 18]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work but with the following nonexertional limitations, she is:

> limited to simple and routine tasks, limited to occasional interactions with coworkers and supervisors, is precluded from interactions involving negotiation, confrontation or team efforts, and is precluded from working with the general public. [AR 23.]

At step four, the ALJ found that Plaintiff could not return to her past relevant work as a Sales Manager. [AR 23.] At step five, based on the vocational expert's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including representative jobs such as warehouse worker, machine operator, and cleaner. [AR 24.] Based on these findings, the ALJ found Plaintiff not disabled through the date of the decision. [AR 24.]

The Appeals Council denied review of the ALJ's decision on August 11, 2020. [AR 1-6.] This action followed.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v.*

3

*Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred when he: (1) failed to properly consider her subjective symptom testimony; and (2) failed to consider the lay witness third-party function report. [Pltf's. Br. at 5-21.] As set forth below, the Court disagrees with Plaintiff and finds that remand is unwarranted on those issues.

**1.     The ALJ Provided Adequate Reasons to Reject Plaintiff's Subjective Testimony**

### A.     Plaintiff's Testimony

In detailing her subjective complaints, Plaintiff testified at the administrative hearing on December 23, 2019 and submitted written statements. [AR 32-52, AR 173-180.] Plaintiff states that she suffers with "extreme anxiety and panic" attacks. [AR 180.] Plaintiff testified that she was fired from her job selling dog treats in September 2015. [AR 36-37.] Following her termination, Plaintiff looked for positions in the same industry, but she stopped applying because she "wasn't having any success." [AR 37.]

When asked about her mental health treatment, Plaintiff testified that, before the disability onset date, "a lot of times she would go to the emergency room [due] to anxiety or panic attacks." [AR 39.] However, the ALJ and Plaintiff's representative confirmed at the hearing that the record did not contain any medical records of hospital visits from before the alleged onset date. [AR 39.] Plaintiff also stated that she had a therapist and psychiatrist briefly, but she no longer attends because those doctors stopped taking her insurance. She now receives her psychotropic medications from her primary care physician, Dr. Wasef, on a monthly basis. [AR 40-41.] Plaintiff's medication, including "Wellbutrin, Lorazepam (Xanax), Cymbalta, and Trazodone," helped at first, but those no longer help alleviate her symptoms. [AR 40-41.] She has panic attacks almost every day and

4

she has difficulties going outside and doing things. [AR 41.] The symptoms stemming from her panic attacks include rapid heartbeat, uncontrolled shaking, and nervousness. Plaintiff testified that she does not leave her apartment for days when she has a panic attack. [AR 41-42.]

When asked about her daily activities, Plaintiff testified that it takes her several hours to prepare to go to the grocery store. However, she regularly goes to the supermarket and the doctor. [AR 42.] Plaintiff also provides daily care for two therapy dogs. [AR 44, 166, 174.] In her function report, Plaintiff stated that she struggles to focus and concentrate. [AR 173.] She gets help from her mom and daughter preparing meals, but she can prepare small meals independently including soups or smoothies. [AR 175.] Plaintiff performs household chores including cleaning the patio, watering plants, cleaning the bathroom, and doing some laundry, once a week for about half-a-day. [AR 175.] She goes shopping several times a week for one or two hours. [AR 175.] Plaintiff spends time with others including her daughter, friend, and mom a couple times a week. [AR 177.] However, she has stopped talking to other friends and family and she no longer hosts social events like she did before. [AR 178.] On a regular basis, she goes to the store, to her doctor, and to pick up her daughter. [AR 177.] She only "sometimes" needs a reminder to complete these activities. [AR 177.]

### B. Legal Standard

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if she makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not

credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) (internal citations and quotation marks omitted) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p, 1996 SSR LEXIS 4.

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, other testimony by the plaintiff that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, plaintiff's daily activities, the plaintiff's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. [AR 21.] Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing.

### C. The ALJ's Decision Sets Forth Several Clear and Convincing Reasons for Rejecting Plaintiff's Credibility

Here, the ALJ gave several reasons to reject Plaintiff's credibility including: (1) she is able to perform a number of daily activities; (2) she provided inconsistent statements on matters related to her disability; (3) she was terminated from her job and she continued to pursue employment for six months following the disability onset date; and (4) inconsistencies between the objective medical evidence and Plaintiff's allegations of disabling limitations undermined her credibility.

First, the ALJ found that Plaintiff's daily activities were inconsistent with her allegations of disabling symptoms lasting in excess of 12 months. [AR 22.] The

6

ALJ's conclusion here is supported by substantial evidence. Plaintiff's daily activities bear on her credibility if the level of activity is inconsistent with her claimed limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Thus, an ALJ may rely on a Plaintiff's daily activities to support an adverse credibility determination only when those activities either "contradict [the plaintiff's] other testimony," or "meet the threshold for transferable work skills"; *i.e.*, where she "is able to spend a substantial part of . . . her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639. However, a claimant need not be "utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Id.*; *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Here, Plaintiff testified that she was largely independent in her activities of daily living. [AR 27.] By her own admission, Plaintiff drives approximately four times a week for various errands including shopping, picking up her daughter and going shopping at the store. [AR 22, 176.] Plaintiff also has two therapy dogs that she cares for daily, and she performs household activities including laundry, cleaning the patio, cleaning the bathroom, and preparing meals. [AR 22, 166, 174.] With respect to social interaction, Plaintiff visits with her mother, friend and daughter multiple times a week. [AR 19.] The ALJ also noted that Plaintiff maintained a romantic relationship for years. [AR 22, 317.] While Plaintiff stated that she had to force herself to do these activities and at times needed reminders, she was able to successfully complete these tasks.

The ALJ found these activities "inconsistent with a finding of a disabling

7

1 limitation." [AR 22.] Specifically, the inconsistency between Plaintiff's testimony
2 regarding her isolation/seclusion and inability to leave her apartment, and her daily
3 activities involving her frequent social interaction and regular excursions outside her
4 home is a clear and convincing reason to discount her testimony. [See AR 22, 42];
5 *Molina*, 674 F.3d at 1112 (finding plaintiff's ability to walk grandchildren to and
6 from school, attend church, go shopping, and take walks undermined her claims that
7 she was incapable of being around others without suffering debilitating panic
8 attacks); *Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (evidence that
9 claimant's self-reported activities suggested a higher degree of functionality than
10 reflected in subjective symptom testimony adequately supported adverse credibility
11 determination). Accordingly, the ALJ properly determined that, to the extent
12 Plaintiff alleged that she experienced disabling symptoms, her "substantial
13 exertional and non-exertional abilities" rendered her allegations less than fully
14 credible.

15 Second, Plaintiff's continued search for a job after her alleged onset date
16 constituted a sufficient reason for the ALJ to find Plaintiff's testimony less than
17 credible. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (plaintiff's job
18 search efforts discredited his allegations of disability); *Bray v. Commissioner of*
19 *Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (fact that a claimant
20 has sought out employment weighs against a finding of disability); *see also Ghanim*
21 *v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("continued receipt" of
22 unemployment benefits can cast doubt on a claim of disability); *but see Webb v.*
23 *Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("That Webb sought employment
24 suggests no more than that he was doing his utmost, in spite of his health, to support
25 himself").

26 In *Copeland*, the claimant's assertion of disability was found inconsistent
27 with the fact that he left his job because he was laid off and then received
28 unemployment benefits while holding himself out as available for and capable of

1   work.  *Copeland*, 861 F.2d at 542.  There, the court concluded this was a sufficient
2   basis to reject a claimant's testimony.  Much like in *Copeland*, following Plaintiff's
3   termination, she continued to pursue employment "in the same industry," "doing the
4   same type of stuff" that she had done previously in pet food sales.  [AR 37.]  While
5   she initially thought it would be easy to find a replacement job because she had a
6   twenty-one-year history in the pet industry, she was unsuccessful which caused her
7   to feel overwhelmed.  [AR 37.]  After she was terminated, Plaintiff tried to receive
8   unemployment benefits but her former employer refused to complete the paperwork
9   because she had been fired.  [AR 38.]

10        Here, Plaintiff's efforts to obtain identical employment to her previous job
11  strongly suggests that Plaintiff felt she was able to maintain full-time employment
12  despite her symptoms.  Thus, it was not error for the ALJ to rely on Plaintiff's
13  continued efforts to seek employment and unemployment benefits when weighing
14  her credibility.  Thus, the record supports the ALJ's characterization that Plaintiff's
15  efforts to seek employment after she lost her job raises doubts as to whether her
16  alleged inability to work is related to her impairments.  Accordingly, this was
17  another clear and convincing reason to find Plaintiff less than fully credible.

18        Third, the ALJ found that Plaintiff made inconsistent statements on matters
19  relevant to her disability—a finding that is supported by the record.  Inconsistent
20  statements are specific and convincing reasons for discounting a claimant's
21  subjective complaints.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir.
22  2001) ("In assessing the claimant's credibility, the ALJ may use 'ordinary
23  techniques of credibility evaluation,' such as considering the claimant's reputation
24  for truthfulness and any inconsistent statements in her testimony"); *see also Turner
25  v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010).

26        Here, the ALJ noted that while Plaintiff stated in her function report that "she
27  stopped talking to almost everyone, she does not socialize, and has secluded
28  herself," she also reported that she spends time with her daughter, mother, and

9

friend multiple times a week. [AR 19.] Further, the ALJ noted that, at the administrative hearing, Plaintiff testified that she was fired from her prior job, however she told Dr. Stewart that she was "laid off." [AR 22.] The ALJ acknowledged that "although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable." The ALJ did not err in finding that Plaintiff was less than truthful based on the inconsistencies in her statements as these obvious discrepancies are sufficient to support discounting Plaintiff's s subjective symptom allegations.

Finally, the ALJ discounted Plaintiff's testimony because it conflicted with the medical evidence in the record. This too was a factor the ALJ was permitted to consider when assessing Plaintiff's credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). As the ALJ highlighted in his opinion, the psychological consultative examiner and the prior administrative medical findings from the State agency psychological consultants found that Plaintiff had no more than mild mental work-related limitations. [AR 23.] Considering this evidence, in part, the ALJ ultimately found that the relevant medical evidence in the file only partially supported Plaintiff's statements regarding the alleged intensity, persistence, and limiting effects of her symptoms. [AR 23.]

In sum, the ALJ gave at least one or more clear and convincing reasons for finding Plaintiff's testimony less than fully credible that were supported by substantial evidence from the record. Accordingly, the ALJ's adverse credibility determination was not made in error.

**2.    The ALJ Permissibly Rejected Lay Witness Testimony**

"Testimony by a lay witness provides an important source of information

about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

Plaintiff argues that the ALJ improperly disregarded her daughter's third-party statement without comment. [Pltf.'s Br. at 19-21.] In December 2017, Plaintiff's daughter, Sandra, completed third-party function report describing Plaintiff's functional limitations. [AR 165-172.] Sandra reported that Plaintiff has difficulty with day-to-day tasks. [AR 165.] She described Plaintiff as needing hours to get ready to go to the store or medical appointments. [AR 166.] When Plaintiff prepares meals, she eats a lot of canned soup, but she requires help to make fresh meals. [AR 167.] Sandra also described that Plaintiff makes four trips a week to the grocery store because she does not get what she wants all at once and it takes her an hour to get through the grocery store. [AR 168.] While Plaintiff used "to go shopping, see friends, go out to eat," Sandra states that Plaintiff "does not really socialize with many people" other than: Plaintiff's daughter, friend Michael, her mom, and two therapy dogs. [AR 166, 170.] When under stress, Plaintiff panics, shakes, cries, and has a hard time breathing. [AR 171.]

While the ALJ did not discuss Plaintiff's daughter's third-party function report, Defendant argues this is harmless error because the lay testimony merely duplicated Plaintiff's rejected statements. (Def's Br. at 5-6.) *See Molina,* 674 F.3d at 1121, *superseded by regulation on other grounds* ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se."). After Defendant raised this argument, Plaintiff did not provide any reply briefing arguing that Sandra's letter is materially different from Plaintiff's testimony or attempting to distinguish the harmless error cases cited by Defendant.

1  The Court agrees with Defendant that Sandra's third-party function report
2  largely mirrors the limitations described by Plaintiff. Plaintiff's function report
3  states that she has a "very hard time doing basic things." [AR 173.] Plaintiff shops
4  "several times a week for one to two hours," she rarely socializes, she takes care of
5  her therapy dogs, and when under stress, she must "catch [her] breath," she "shakes"
6  and she "cries." [AR 176-179]; [*compare generally* AR 165-172, with AR 173-
7  180.] Following *Molina*, the ALJ's failure to discuss Plaintiff's daughter's lay
8  witness statement was harmless error and remand is not warranted on this issue.

### 3. Constitutional Challenge

Finally, in a "Notice of New Authority," filed after Defendant's Opposition brief, Plaintiff suggests that the decisions of the United States Supreme Court in *Collins v. Yellen*, 141 S.Ct. 1761, 1783-84, 210 L. Ed. 2d 432 (2021) and *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192, 207 L. Ed. 2d 494 (2020), as well as an opinion issued by the White House's Office of Legal Counsel ("OLC"), cast doubt on the constitutionality of the statute under which Andrew Saul (who was Commissioner of Social Security when the Appeals Council denied his request for review) was appointed.

Numerous courts presented with this challenge have deemed it to be without merit or concluded that the claimant lacked standing. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring in part) (expressing doubt that the decision would require "the mass of SSA decisions . . . to be undone"); *see, e.g., Standifird v. Kijakazi*, No. 20CV1630-GPC(BLM), 2021 WL 5634177 (S.D. Cal. Dec. 1, 2021); *Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 U.S. Dist. LEXIS 186705, at *6-7 (D. Nev. Sep. 29, 2021) ("Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing."); *Hester v. Comm'r of Soc. Sec.*, No. C21-0228-SKV, 2021 U.S. Dist. LEXIS 189112, at *5-6 (W.D. Wash. Sep. 30, 2021); *Robles*

*v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 180304, 2021 WL 4285170, at *4 n.6 (E.D. Cal. Sept. 21, 2021). Thus, remand on this issue is unwarranted.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: February 23, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE